# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

GAVIN C. NEWSOM,          )
                                  )
      Plaintiff,            )
                                  )
         v.             )      Case No. N25C-06-251 SPL
                                  )
FOX NEWS NETWORK, LLC,    )
                                  )
      Defendant.      )

Submitted: January 30, 2026
Decided: April 30, 2026

## MEMORANDUM OPINION AND ORDER

*On Fox News Network, LLC's*
*Motion to Dismiss the Amended Complaint and*
*Special Motion to Strike,*
**DENIED.**

*On Fox News Network, LLC's*
*Motion for Attorneys' Fees and Costs Incurred in*
*Moving to Strike Plaintiff's Claim under Unfair Competition Law*,
**DENIED.**

Michael J. Teter, Esq. (Argued), LEGAL ACCOUNTABILITY CENTER TETER LEGAL, Salt Lake City, Utah, Mark Bankston, Esq., FARRAR & BALL LLP, Houston, Texas, Brian E. Farnan, Esq., Michael J. Farnan, Esq., FARNAN LLP, Wilmington, Delaware, *Attorneys for Plaintiff, Gavin C. Newson.*

Patrick F. Philbin, Esq. (Argued), Kyle T. West, Esq., Chase T. Harrington, Esq. TORRIDON LAW PLLC, John L. Reed, Esq. of DLA PIPER LLP (US), *Attorneys for Defendant, Fox News Network, LLC.*

**LUGG, J.**

# INTRODUCTION

In the midst of civil unrest in Los Angeles, California, Governor Gavin C. Newsom spoke on the telephone with President Donald Trump. The call took place after 10:00 p.m. on the night of Friday, June 6, 2025 (Pacific Daylight Time) (after 1:00 a.m. on Saturday, June 7, 2025 (Eastern Daylight Time)). The two did not speak again before President Trump, at a Tuesday, June 10, 2025, Oval Office press conference, was asked when he last spoke with Governor Newsom; President Trump responded that he and Governor Newsom spoke "[a] day ago." Soon thereafter, Governor Newsom posted on X that "[t]here was no call." President Trump then provided Fox News Network ("FNN") reporters a "phone log" evidencing the Friday night / Saturday morning call he had with Governor Newsom. On this information, FNN published – through nationally televised reporting overlaid by chyron[1] – that "Gavin Lied About Trump's Call."

Governor Newsom sued FNN for defamation. FNN has moved to dismiss and has moved for attorneys' fees and costs incurred in its effort to strike Governor Newsom's California Unfair Competition Law claim. Having reviewed and considered the Amended Complaint, the parties' briefing and arguments, and the record in this case, the Court denies FNN's motions.

---

[1] A "chyron" is "a caption superimposed over usually the lower part of a video image (as during a news broadcast.)"
https://www.merriam-webster.com/dictionary/chyron.

**FACTUAL AND PROCEDURAL BACKGROUND**[2]

On June 6, 2025, at approximately 10:23 p.m. Pacific Daylight Time (or June 7, 2025, at approximately 1:23 a.m. Eastern Time), California Governor Gavin Newsom spoke on the telephone with President Donald Trump for about 16 minutes.[3] The next day, Governor Newsom discussed this conversation in an interview with MSNBC.[4] Other news outlets covered Governor Newsom's statements about the call,[5] and, on Sunday, June 8, 2025, *Fox News Sunday*, *The Big Weekend Show*, and *Life, Liberty, & Levin* noted that a call occurred between Governor Newsom and President Trump.[6] On Monday, June 9, 2025, a local FNN

---

[2] The facts are drawn from the Amended Complaint and, to the extent necessary to decide the pending motions, the attachments supplementing the parties' briefs. On a motion to dismiss, the Court views all well-pled facts as true and in a light most favorable to Governor Newsom, the non-moving party. *See e.g. Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC,* 27 A.3d 531, 536 (Del. 2011). "Indeed, it may, as a factual matter, ultimately prove impossible for the plaintiff to prove his claims at a later stage of a proceeding, but that is not the test to survive a motion to dismiss." *Id.*

The Governor of California and the President of the United States are principal actors. And, while the lawsuit is brought by the Governor of California in his individual capacity, his position as Governor is pertinent to an assessment of his defamation claim. For these reasons, unless quoting a source that declines to provide these individuals' titles, the Court will refer to these individuals as Governor Newsom and President Trump.

[3] D.I. 14 ("Amend. Compl.") ¶ 20.

[4] *Id.* ¶ 22.

[5] *Id.* ¶¶ 23, 24, 27.

[6] *Id.* ¶ 27.

affiliate aired an interview between Governor Newsom and FNN reporter Elex Michaelson, in which Governor Newsom discussed his phone call with President Trump.[7]

On Tuesday, June 10, 2025, during a press conference in the White House Oval Office, President Trump discussed the civil unrest in Los Angeles, his plan to deploy the National Guard, and his criticisms of Governor Newsom.[8]  A reporter asked President Trump, "[w]hen was the last time you spoke to Governor Newsom?"[9]  President Trump responded "A day ago.  Called him to tell him, got to do a better job, he's doing a bad job.  Causing a lot of death and a lot of potential death."[10]

Governor Newsom, on X, responded to a video clip of President Trump's statement about a call "[a] day ago" writing that "There was no call.  Not even a voicemail.  Americans should be alarmed that a President deploying Marines onto our streets doesn't even know who he's talking to."[11]   Informed of Governor Newsom's X post, President Trump provided FNN host John Roberts a screenshot

---

[7] *Id*. ¶¶ 24, 25, 26.

[8] *Id*. ¶¶ 30, 32.

[9] *Id*. ¶ 33.

[10] *Id*. ¶ 34.

[11] *Id*. ¶ 35.

of his call log revealing the sixteen-minute phone conversation between Governor Newsom and President Trump on June 7, 2025.[12]

Roberts, on X, then replied to Governor Newsom's statement that "[t]here was no call," by posting:

> President Trump just contacted me from Air Force 1 to say this: "First call was not picked up. Second call, Gavin picked up, we spoke for 16 minutes. I told him to, essentially, 'get his ass in gear,' and stop the Riots, which were out of control. More than anything else, this shows what a liar he is – Said I never called. Here is the evidence."[13]

Roberts did not include the screenshot of President Trump's call log with his X post.[14] On the afternoon of June 10, 2025, reporting on FNN, Roberts referenced the call between Governor Newsom and President Trump,[15] describing President Trump as stating the call occurred "yesterday or the other day."[16]

Later in the evening of June 10, Jesse Watters, on his FNN show *Jesse Watters Primetime*, played an edited clip of the Oval Office press conference.[17] The edited footage included President Trump's comment, "Called him to tell him, got to do a better job, he's doing a bad job. Causing a lot of death and a lot of potential death,"

---

[12] *Id.* ¶ 36.

[13] *Id.* ¶37.

[14] *Id.* ¶ 37.

[15] *Id.* ¶ 40.

[16] *Id.* ¶ 41.

[17] *Id.* ¶ 45.

but omitted President Trump's statement that he spoke to Governor Newsom "[a] day ago."[18] Watters then commented:

> Newsom responded, and he said there wasn't a phone call. He said Trump never called him. Not even a voicemail, he said. But John Roberts got Trump's call logs, and it shows Trump called him late Friday night and they talked for 16 minutes. Why would Newsom lie and claim Trump never called him? Why would he do that?[19]

The chyron appearing below Watters during his report displayed a "Fox News Alert" that "Gavin Lied About Trump's Call."[20]

Governor Newsom, on June 27, 2025, issued a retraction demand to FNN and initiated a defamation lawsuit in Delaware.[21] On July 17, 2025, Watters, on *Jesse Watters Primetime*, addressed his June 10, 2025, report.[22] Watters played the unedited video of President Trump's response to the question: "When was the last time you spoke to Governor Newsom?" and included President Trump's response that he and Governor Newsom spoke "[a] day ago." [23] Watters explained that, in his June 10 report, he excluded President Trump's response that the call occurred "[a]

---

[18] *Id.* ¶ 47.

[19] *Id.* ¶ 47.

[20] *Id.* ¶ 48.

[21] *Id.* ¶ 74; D.I. 18 ("Def. Mot."), Ex. E; D.I. 1.

[22] Amend. Compl. ¶ 75.

[23] *Id.* ¶ 75.

day ago" because "it didn't seem relevant."[24]   Watters stated that he understood Governor Newsom's post – "[t]here was no call.  Not even a voicemail" – to mean there was never a call between Governor Newsom and President Trump, not that President Trump's description of the timing of the call was incorrect.[25]   Watters concluded by noting, "[Newsom] didn't deceive anybody on purpose, so I'm sorry, he wasn't lying.  He was just confusing and unclear.  Next time, Governor, why don't you just say what you mean."[26]   The chyron beneath Watters read, "Gavin Didn't Lie, He Was Just Sloppy."[27]

Governor Newsom amended his original complaint to remove the California Unfair Competition Claim and to include Watters' July 17, 2025, response to the retraction demand.[28]   FNN moved to dismiss the amended complaint on September 25, 2025.[29]   Upon Governor Newsom's withdrawal of the Unfair Competition Claim in his amended complaint, FNN now seeks attorneys' fees and costs incurred in filing its original motion and as a "prevailing party" under California's anti-SLAPP law.[30]

---

[24] *Id.* ¶ 75.

[25] *Id.* ¶ 75.

[26] *Id.* ¶ 75.

[27] *Id.* ¶ 75.

[28] *See id.*

[29] Def. Mot.

[30] D.I. 17 at 1-2.

FNN contends the complaint must be dismissed under the doctrine of *forum non conveniens* because allowing the lawsuit to proceed in Delaware would impose a substantial hardship on FNN.[31]  As to Governor Newsom's defamation claim, FNN asserts the complaint fails to plausibly allege: (1) facts showing Watters' statement was substantially untrue; (2) the statement was not a protected opinion; and (3) actual malice.[32]  Governor Newsom responded in opposition,[33] and FNN replied.[34]  The Court heard oral argument on January 30, 2026, and took the matter under advisement.[35]

---

[31] Def. Mot. at 2, 10.

[32] *Id*. at 3.

[33] D.I. 23 ("Pl. Resp.").

[34] D.I. 30 ("Def. Reply").

[35] D.I. 32.

## ANALYSIS

### I. *FORUM NON CONVENIENS*

#### A. Legal Standard for *forum non conveniens* claims

FNN argues that this case, to the extent that it belongs anywhere, does not belong in Delaware.[36] Governor Newsom contends that FNN has not shown an overwhelming hardship compelling dismissal of the Delaware case.[37] The parties appear to agree that California substantive law controls.[38] On the record before it, the Court finds that California law applies to the substantive issues raised by Governor Newsom's defamation claim,[39] and that Delaware procedural law controls.[40]

Delaware Superior Court Civil Rule 12(b)(3) governs a motion to dismiss based on *forum non conveniens*.[41] The doctrine of *forum non conveniens* empowers this Court to "decline to hear a case despite having jurisdiction over the subject

---

[36] Def. Mot. at 9.

[37] Pl. Resp. at 6.

[38] Def. Mot. at 11; Pl. Resp. at 8-9.

[39] Restatement (Second) of Conflict of Laws § 150 (Am. Law Inst. 1971) ("the state of most significant relationship will usually be the state where the [plaintiff] was domiciled at the time, if the matter complained of was published in that state.").

[40] *See, e.g., US Dominion, Inc. v. Fox News Network, LLC*, 2021 WL 5984265 at *18 (Del. Super. Ct. Dec. 16, 2021).

[41] *Arrowood Indem. Co. v. AmerisourceBergen Corp.*, 2023 WL 2726924, at *8 (Del. Super. Ct. Mar. 30, 2023).

matter and the parties."[42]   Delaware Courts rarely grant relief "based on *forum non conveniens*, and the doctrine is not a vehicle by which the Court should determine which forum would be most convenient for the parties."[43]   The doctrine allows the Court to exercise some control over a foreign plaintiff's access to a forum in Delaware.[44]   "*Forum non conveniens* motions are addressed to the trial court's discretion"[45] and are only granted in "rare case[s]."[46]

Where there are no issues of prior pendency in other jurisdictions, this Court, in assessing a *forum non conveniens* claim, considers the "*Cryo-Maid* factors":

> (1) the relative ease of access to proof; (2) the availability of compulsory process for witnesses; (3) the possibility of the view of the premises; (4) whether the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction; (5) the pendency or nonpendency of a similar action or actions in another

---

[42] *Chrysler First Bus. Credit Corp. v. 1500 Locust Ltd. Partnership*, 669 A.2d 104, 106 (Del. 1995).

[43] *In re Citigroup, Inc. S'holder Derivative Litig.,* 964 A.2d 106, 117 (Del. Ch. 2009) (citing *Taylor v. LSI Logic Corp.,* 659 A.2d 1196, 1199 (Del. 1997)).

[44] *Ison v. E.I. DuPont de Nemours and Co., Inc.*, 729 A.2d 832, 839-42 (Del. 1999) (examining doctrine of *forum non conveniens* and concluding that "[i]n Delaware jurisprudence there is a proper place for dismissals based on *forum non conveniens*.").

[45] *GXP Cap., LLC v. Argonaut Mfg. Servs., Inc.,* 253 A.3d 93, 97 (Del. 2021).

[46] *Aimbridge Hosp., LLC v. Plaza Resort Atlantic Ocean LLC*, 2024 WL 3949965, at *2 (Del. Super. Ct. Aug. 26, 2024).

jurisdiction; and (6) all other practical problems that would make the trial of the case easy, expeditious and inexpensive.[47]

Dismissal on *forum non conveniens* grounds requires the movant to show that "overwhelming hardship and inconvenience" would result if dismissal is not granted.[48] "It is not enough that all of the *Cryo-Maid* factors may favor defendant."[49] Depriving the plaintiff of their chosen forum requires the movant to meet the high burden of showing that the *Cryo-Maid* factors weigh so heavily that the defendant will face overwhelming hardship if the lawsuit proceeds in Delaware.[50] The overwhelming hardship standard is not an "insurmountable burden for defendants;"[51] it is a "stringent," but not "preclusive" standard.[52] On the record here, the Court concludes that FNN has failed to establish overwhelming hardship warranting removal from this forum.

---

[47] *Martinez v. E.I. DuPont de Nemours and Co., Inc.*, 86 A.3d 1102, 1104 (Del. 2014) (citing *Taylor*, 689 A.2d at 1198-99 (detailing the factors set forth in *Gen. Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681 (Del. 1964)).

[48] *BCORE Timber EC Owner LP v. Qorvo US, Inc.*, 2023 WL 2985250, at *2 (Del. Super. Ct. Apr. 18, 2023).

[49] *Chrysler First Bus.*, 669 A.2d at 105.

[50] *See Ison*, 729 A.2d 832, 842 (Del. 1999); *see also Warburg, Pincus Ventures, L.P. v. Schrapper*, 774 A.2d 264, 267 (Del. 2001).

[51] *Martinez*, 86 A.3d at 1105.

[52] *Id.*

## B. Application of the *forum non conveniens* standard

### 1. Relative Ease of Access of Proof

FNN contends that the Court should dismiss the Delaware action because it involves "a California resident claiming California-based injuries, while Fox News Network is headquartered in and produced the challenged statements in New York."[53] Governor Newsom responds that where the defendant is a "larger, more sophisticated entity," such as FNN, "the hardship of out-of-state litigation is lessened"[54] and that California does not present a more favorable forum than Delaware because witnesses are subject to Delaware process.[55]

The location of witnesses and evidence may stretch from New York, where the broadcast initiated, to California, where Governor Newsom resides. But the advancement of "modern methods of information transfer render concerns about transmission of documents virtually irrelevant."[56] Likewise, modern methods of transportation have lessened the Court's concern about the travel of witnesses who

---

[53] Def. Mot. at 10.

[54] Pl. Resp. at 7.

[55] *Id*. at 7-8.

[56] *In re CVS Opioid Ins. Litig.*, 2022 WL 3330427, at *7 (Del. Super. Ct. Aug. 12, 2022) (quoting *Barrera v. Monsanto Co.*, 2016 WL 4938876, at *6 (Del. Super. Ct. Sept. 13, 2016)).

live outside of Delaware.[57] The use of video conferencing technology also provides a viable method to reduce inconvenience, allowing witnesses to provide testimony remotely and reducing the need for physical travel.[58] And, as here, where "there is no single forum or locality in which the bulk of witnesses are located, the location of witnesses [does] not weigh in favor of one forum or the other."[59]

Governor Newsom sued FNN in Delaware, FNN's corporate home, for statements published in a national broadcast. To be sure, some witnesses and evidence may cross state lines; however, the associated burdens extend to both Governor Newsom and FNN and, of course, there is no single forum convenient for all parties and witnesses.

### 2. Availability of Compulsory Process for Witnesses

FNN contends that witnesses such as Governor Newsom's staff and social media team are beyond the Court's compulsory process.[60] Governor Newsom responds that "he has subjected himself to this Court's jurisdiction and compulsory

---

[57] *Rapoport v. Litigation Trust of MDIP Inc.*, 2005 WL 3277911, at *6 (Del. Ch. Nov. 23, 2005).

[58] *American Guar. & Liability Ins. Co. v. Intel Corp.*, 2009 WL 2589597, at *12 (Del. Super. Ct. July 24, 2009).

[59] *Rapoport*, 2005 WL 3277911, at *6 (cleaned up).

[60] Def. Mot. at 10-11.

process will be available for him to testify" and that the witnesses relevant to this matter are subject to compulsory process.[61]

To the extent there may be some difficulty in securing evidence, the Court should consider whether "another forum would provide a substantial improvement as to the number of witnesses who would be subject to compulsory process."[62] FNN identifies Governor Newsom's staff and social media team as witnesses whose testimony would be unavailable if this case proceeds in Delaware.[63] Not so. California[64] and Delaware[65] have both adopted the Uniform Interstate Depositions and Discovery Act which provides FNN the necessary tools to compel depositions of any out-of-state witnesses. And extant technology mitigates any inconvenience in case investigation and preparation; "video depositions or transcribed depositions can be taken at most places where non-[party] witnesses are located."[66]

---

[61] Pl. Resp. at 8.

[62] *Mt. Hawley Ins. Co. v. Jenny Craig, Inc.*, 668 A.2d 763, 769 (Del. Super. Ct. 1995) (citations omitted).

[63] Def. Mot. at 10-11.

[64] CAL. CIV. P. CODE § 2029.100 (West) (California Interstate and International Depositions and Discovery Act).

[65] 10 *Del.C.* § 4311 (Delaware Uniform Interstate Depositions and Discovery Act).

[66] *Chrysler Fin. Corp. v. Fruit of the Loom, Inc.*, 1992 WL 19945, at *2 (Del. Super. Ct. Feb. 4, 1992).

### 3. View of the Premises

The view of the premises generally holds "little to no weight even in a case where there was a relevant 'premises' that the fact-finder might want to view."[67]  But here, this factor carries no weight because there is no premises to view or, viewed another way, the premises may be viewed anywhere.  Governor Newsom alleges defamatory statements made during a national news broadcast.  The briefing in this case reveals that the partes are in possession of the pertinent "scene" – the broadcast footage.  The scene, or premises, is readily available for review and examination.[68]

### 4. Application of Delaware Law

This Court next considers "whether the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction."[69]   When "important and novel issues" stem from a different state's law, that state is best positioned to determine the law's application.[70] Nonetheless, "[w]hile not preferable, Delaware courts are accustomed to applying the laws of sister states."[71]

---

[67] *Hall v. Maritek Corp.*, 170 A.3d 149, 162 (Del. Super. Ct. 2017) (cleaned up).

[68] *See Doe v. Cahill*, 884 A.2d 451, 464 (Del. 2005).

[69] *Martinez*, 86 A.3d at 1109.

[70] *Id.* at 1109-10.

[71] *GXP Capital, LLC*, 234 A.3d at 1197 (citing *Taylor*, 689 A.2d at 1200).

FNN contends that, under *Martinez v. E.I. DuPont de Nemours & Co.*, "courts must give 'weight to a defendant's interest in having important issues of foreign law decided by the courts whose law governs the case.'"[72] Governor Newsom responds this case does not present novel or challenging issues necessitating removal; he points to the fact that *Martinez* involved a novel legal issue of Argentinian law, foreign plaintiffs, and a foreign language.[73] Governor Newsom argues Delaware as the forum state in *Martinez* was impractical, while the challenges supporting removal in *Martinez* are absent here.[74]

In *Martinez*, the Delaware Supreme Court affirmed this Court's dismissal under *forum non conveniens* where Argentinian nationals initiated a lawsuit in Delaware invoking Argentinian substantive law, drafted in Spanish.[75] The Delaware Supreme Court found these factors, and the unique international policy issues, rendered Argentina's Courts best equipped to hear the case.[76] The Court concluded that Delaware is not a proper venue where "a Delaware court was being asked to

---

[72] Def. Reply at 4.

[73] Pl. Resp. at 5.

[74] *Id*.

[75] Martinez, 86 A.3d at 1106-07.

[76] *Id.* at 1107-08.

decide complex and unsettled issues of Argentine tort law, based on expert testimony extrapolating from sources of law expressed in a foreign language."[77]

These unique considerations do not exist here. Delaware Courts are capable of addressing defamation claims guided by the substantive law of a sister state. FNN claims that California's retraction statute and anti-SLAPP law provide important protection to publishers like FNN and that should compel this Court to allow California to decide this case.[78] But Delaware courts are fully capable of applying California law and "often decide legal issues—even unsettled ones—under the law of other jurisdictions."[79] The application of California substantive law here is not a compelling reason to grant dismissal under the doctrine of *forum non conveniens*.

### 5. Pendency of Similar Action in Other Jurisdictions

Where no other actions are pending between the parties, "the plaintiff's choice of forum is accorded even more weight."[80] The absence of other pending litigation between Governor Newsom and FNN therefore "weighs significantly against" granting FNN's *forum non conveniens* motion.[81]

---

[77] *Id.* at 1108 (Del. 2014) (cleaned up).

[78] Def. Mot. at 9, 28-29.

[79] *Berger v. Intelident Solutions, Inc.*, 906 A.2d 134, 137 (Del. 2006) (citing *Taylor*, 689 A.2d at 1200).

[80] *Mar-Land Indus. Contractors, Inc. v. Caribbean Petroleum Refining, L.P.*, 777 A.2d 774, 778 (Del. 2001).

[81] *Berger*, 906 A.2d at 137.

### 6. Other Practical Problems

The sixth and final *Cryo-Maid* factor examines "all other practical problems that would make the trial of the case easy, expeditious, and inexpensive."[82] FNN does not identify any other practical problems not previously addressed. FNN chose to establish its corporate home in Delaware. In so doing, it has availed itself of the benefits of this State. This self-selected domicile, too, serves to establish Delaware as a jurisdiction for resolving suits against it. For this reason, and because the *Cryo-Maid* factors do not favor dismissal, FNN's motion to dismiss on the ground of *forum non conveniens* is denied.

---

[82] *BCORE Timber*, 2023 WL 2985250, at *7.

## II. THE DEFAMATION CLAIM

### A. The Rule 12(b)(6) standard for a defamation claim.

Delaware Superior Court Civil Rule 12(b)(6) governs a motion to dismiss for failure to state a claim upon which relief can be granted.[83] When assessing a motion to dismiss under this rule, this Court must:

> (1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) do not affirm a dismissal unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[84]

Delaware's pleading standards at the motion to dismiss stage are minimal.[85] This Court, in *U.S. Dominion v. Fox*, explained that even where the applicable substantive state law contains an anti-SLAPP statute, Delaware's conceivability standard of review applies to a motion to dismiss.[86] A complaint is sufficient to survive a motion to dismiss under Rule 12(b)(6) "[if] a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[87] If, based on the circumstances presented, the plaintiff may recover,

---

[83] Super. Ct. Civ. R. 12(b)(6).

[84] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).

[85] *Id.* at 536.

[86] 2021 WL 5984265 at *18-19 (Del. Super. Ct. Dec. 16, 2021).

[87] *Spence v. Funk*, 396 A.2d 967, 968, 972 (Del. 1978).

then the motion to dismiss must be denied.[88]  Conversely, a motion to dismiss will be granted if "under no reasonable interpretation of the facts alleged could the complaint state a complaint for which relief might be granted."[89]  The Court need not "accept conclusory allegations unsupported by specific facts . . . [or] draw unreasonable inferences in the plaintiff's favor."[90]

Defamation suits call for additional scrutiny when evaluating a motion to dismiss.  "Early dismissal of defamation lawsuits for failure of the complaint to state a claim on which relief can be granted not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive."[91]  Courts set a "high bar to clear to establish defamation," especially for claims made by a public figure against the free press.[92]

### B. Applicable substantive law.

This Court follows the Restatement (Second) of Conflict of Laws which directs that the law of the jurisdiction with the "most significant relationship" to the

---

[88] *Id.* at 968.

[89] *Unbound Partners Ltd. P'ship v. Invoy Holdings Inc.*, 251 A.3d 1016, 1023 (Del. Super. Ct. 2021) (internal citations omitted).

[90] *Clinton v. Enterprise Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009).

[91] *ShotSpotter Inc. v. VICE Media, LLC*, 2022 WL 2373418, at *6 (Del. Super. Ct. Jun. 30, 2022) (cleaned up).

[92] *Id.* (cleaned up).

case governs.[93]   The Restatement further specifies that "the state of the most significant relationship will usually be the state where the [plaintiff] was domiciled at the time, if the matter complained of was published in that state."[94]   In *Schmidt v. Washington Newspaper Publishing Company*, the plaintiff was a resident of California, and no other state held a "more significant relationship" to the case; therefore, that court applied California substantive law.[95]   So, too, here.  The parties do not identify another jurisdiction with any significant relationship to this case; in fact, they appear to agree that California substantive law controls.[96]   In any event, the Court will apply California substantive law because that is the plaintiffs' home state.

## C. Federal Constitutional Considerations

To the extent First Amendment protections are asserted, the Court will apply precedent assessing Constitutional protections applicable to defamation claims.[97]   "The Free Speech Clause of the First Amendment provides that 'Congress shall

---

[93] *Smith v. Delaware State Univ.*, 47 A.3d 472, 480 (Del. 2012).

[94] Restatement (Second) of Conflict of Laws § 150 (Am. Law Inst. 1971).

[95] *Schmidt v. Washington Newspaper Publ'g Co.*, 2019 WL 4785560, at *2 (Del. Super. Ct. Sept. 30, 2019).

[96] Def. Mot. at 11; Pl. Resp. at 8-9.

[97] *See Page v. Oath*, 2021 WL 528472, at *3 (Del. Super. Ct. Feb. 11, 2021) (finding a choice of law determination between New York and Delaware unnecessary for defamation claims).

make no law . . . abridging the freedom of speech.'"[98] But, Congress and the States may impose liability for defamatory speech "subject to a number of constitutional guardrails."[99] To be actionable, a statement must "be understood as defamatory by a reasonable third party and was published."[100] "[W]hen the challenged statement is on a matter of public concern, the plaintiff must demonstrate that the statement was false."[101] Statements of opinion on matters of public concern "are not categorically shielded from actionability."[102] Rather, to be actionable, defamatory statements of opinion must "reasonably be interpreted as stating or implying defamatory facts about an individual that are provably false."[103]

Commentary relating to political, social, and other community concerns are fairly considered addressing matters or public concern warranting greater Constitutional scrutiny.[104] The Delaware Supreme Court has concluded that "statements on matters of public concern are actionable in defamation when, even if

---

[98] *Cousins v. Goodier*, 283 A.3d 1140, 1148 (Del. 2022) (quoting U.S. CONST. amend I) (cleaned up).

[99] *Id.* (cleaned up).

[100] *Id.* (cleaned up).

[101] *Id.* (cleaned up).

[102] *Id.* (cleaned up).

[103] *Id.* (cleaned up).

[104] *Id.* (cleaned up).

presented as 'opinion,' they may be reasonably construed as stating or implying defamatory facts about an individual that are provably false."[105]

For statements concerning a public official to be actionable, a plaintiff must allege actual malice.[106] "'Actual malice' means that a defendant published false information about a plaintiff 'with knowledge that it was false or with reckless disregard of whether it was false or not.'"[107] Reckless disregard is understood to mean the defendant "entertained serious doubts as to the truth of [the] publication" or had a "high degree of awareness of [its] falsity."[108] "The failure to investigate a statement's truth, standing alone, is not evidence of actual malice, even if a prudent person would have investigated before publishing the statement. But a speaker cannot purposefully avoid the truth and then claim ignorance."[109] If a plaintiff is able to offer "some direct evidence that the defendant's statement "was probably false, the Court may infer that the defendant intended to avoid the truth."[110]

---

[105] *Id.* at 1155 (Del. 2022) (cleaned up).

[106] *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-280 (1964).

[107] *US Dominion, Inc., LLC*, 2021 WL 5984265, at *28 (cleaned up).

[108] *US Dominion, Inc.*, 2021 WL 5984265, at *28 (cleaned up).

[109] *Id.* (cleaned up).

[110] *Id.* (cleaned up).

## D. Governor Newsom's defamation claim

Under California law, defamation "involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage."[111]  "The defamatory statement must also specifically refer to, or be 'of and concerning,' the plaintiff."[112]  As explained in *McGarry v. University of San Diego*, a valid defamation claim must be supported by statements containing a "provable falsehood," while generally protected, "expressions of opinion may imply an assertion of objective fact and a statement that implies a false assertion of fact, even if couched as an opinion can be actionable."[113]

FNN argues that its statements cannot be proven false because they are statements of opinion.[114]  Because falsity is a necessary element of defamation, "only statements alleging facts can properly be the subject of a defamation action."[115]  Pure opinions are not actionable.[116]  Opinions do not, however, enjoy blanket protection.[117]  "[W]here an expression of opinion implies a false assertion of fact,

---

[111] *Taus v. Loftus*, 151 P.3d 1185, 1209 (Cal. 2007).

[112] *John Doe 2 v. Superior Court*, 206 Cal.Rptr.3d 60, 68 (Cal. Ct. App. 2016).

[113] 64 Cal.Rptr.3d 467, 479 (Cal. Ct. App. 2007).

[114] Def. Mot. at 15.

[115] *US Dominion, Inc.*, 2021 WL 5984265, at *26.

[116] *Id.*

[117] *ZL Technologies, Inc. v. Does 1-7*, 220 Cal.Rptr.3d 569, 589 (Cal. Ct. App. 2017).

the opinion can constitute actionable defamation."[118]   Whether a statement constitutes a statement of fact or opinion is a question of law.[119]   As such, this Court must determine whether the statements expressed in FNN's broadcasts are actionable: "whether a reasonable fact finder could conclude that the published statement declares or implies a provably false assertion of fact."[120]

To answer this question, California Courts have developed a "totality of the circumstances test," under which the language and context of the statement are to be examined.[121]   For the statement to be defamatory, it must be "understood in a defamatory sense."[122]   Where the indicia of an opinion piece are present, "readers can be expected to discount the statements made in that context as more likely to be the stuff of opinion than fact."[123]   Courts must consider "the nature and full content of the communication and the knowledge and understanding of the audience to whom the publication was directed."[124]

---

[118] *Id.* at 589 (cleaned up).

[119] *Franklin v. Dynamic Details*, 10 Cal.Rptr.3d 429, 436 (Cal. Ct. App. 2004).

[120] *Id.*

[121] *Baker v. Los Angeles Herald Examiner*, 721 P.2d 87, 90 (Cal. 1986).

[122] *Id.*

[123] *Morningstar v. Superior Court*, 29 Cal.Rptr.2d 547, 556 (Cal. Ct. App. 1994) (quoting Smolla, Law of Defamation (1991) § 612[4] at 6-45 to 6-46).

[124] *Baker*, 721 P.2d at 91.

California law has identified three types of defamation plaintiffs that "must prove actual malice when defamatory speech relates to a matter of public concern:" the public official, the general-purpose public figure, and the limited purpose public figure.[125] Whether a plaintiff is a public official or public figure is a "question of law for the Court to decide."[126] A person who holds a governmental office is a public official.[127] Those who have accepted a governmental office "are deemed to have accepted the risk of closer public scrutiny."[128] Governor Newsom, as a public official, must allege actual malice on behalf of FNN in the publication of defamatory speech.

A plaintiff can demonstrate actual malice through circumstantial evidence.[129] Circumstantial evidence may include:

> (i) obvious reason to doubt the veracity of the informant; (ii) a basis wholly on an unverified, anonymous source; (iii) such an inherent improbability 'that only a reckless man would have put them in circulation;' (iv) financial motive; (v) a departure from journalistic standards; (vi) a preconceived false narrative; and (vii) a refusal to retract the statement and continuing to repeat statements that have been proven false.[130]

---

[125] *Mosesian v. McClatchy Newspapers*, 233 Cal.App.3d 1685, 1694 (1991).

[126] *Id.*

[127] *Id.* at 1696.

[128] *Id.*

[129] *US Dominion, Inc. v. Fox News Network, LLC*, 293 A.3d 1002, 1043 (Del. Super. Ct. 2023).

[130] *Id.* (internal citations omitted).

No single factor is conclusive, and a plaintiff may prove actual malice through an accumulation of factors.

**1. It is reasonably conceivable that FNN knew the statements were false at the time of making them.**

FNN contends that the "'gist' or 'sting' of the suggestion that Newsom lied was substantially true,"[131] because "[t]he word 'lie' certainly encompasses Newsom's misleading tweet categorically denying he had a call with the President."[132] "Substantial truth," FNN asserts, "turns on what Newsom actually said, not what he wishes he had said."[133] Governor Newsom responds that "the central—indeed, the only—dispute between Newsom and Trump was *when* the two had last spoken."[134] According to Governor Newsom, this issue was so important that "reporters asked Trump *when* he has last spoken to Newsom."[135] Governor Newsom's comment that he had no call with President Trump "[a] day ago" was not a lie as "[t]he timing of any call was not minor. It was *the* question."[136]

---

[131] Def. Mot. at 13.

[132] *Id*. at 13-14.

[133] *Id*. at 14.

[134] Pl. Resp. at 12.

[135] *Id*.

[136] *Id.*

Generally, "a defamation claim does not require a plaintiff to plead or prove falsity or malice."[137] But public officials are considered "[persons] of fortitude, able to thrive in a hardy climate."[138] For this reason, public officials must prove "that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."[139]

Governor Newsom offers *Dickinson v. Cosby*[140] as a framework for assessing the falsity of FNN's statements. There, the plaintiff publicly accused Bill Cosby of rape.[141] Cosby's attorneys declared the "story accusing Bill Cosby of rape is a lie" and publicly branded Dickinson as a liar.[142] Dickinson sued Cosby for defamation.[143] Cosby argued that the "gist or sting of the statements was not that Dickinson lied about the rape allegations, but simply that she was a liar," which Cosby argued was substantially true.[144] The Court disagreed and found Cosby's repeated characterization of Dickinson's rape allegation as a fabrication was not a

---

[137] *ZL Technologies,* 220 Cal.Rptr.3d at 595 (cleaned up).

[138] *N.Y. Times Co.*, 376 U.S. at 273 (1964).

[139] *Id.* at 279-80.

[140] 225 Cal.Rptr.3d 430 (Cal. Ct. App. 2017).

[141] *Dickinson v. Cosby*, 225 Cal.Rptr.3d 430, 438 (Cal. Ct. App. 2017).

[142] *Id.* at 440.

[143] *Id.* at 437.

[144] *Id.* at 461.

"minor inaccuracy," but rather at the heart of the statements and that the "gist" or "sting" of the statements was the falsity of the rape allegations.[145]

Here, Governor Newsom contends that the gist or sting of FNN's statements was that Governor Newsom lied about having spoken to President Trump.[146] Not that he is a liar generally.[147] At this stage of the litigation, based on the record before it, and drawing all reasonable inferences in favor of the non-moving party – Governor Newsom – the Court finds that the complaint sets forth facts on which it is reasonably conceivable the plaintiff could recover.

The crux of FNN's statements is that Governor Newsom was dishonest – lied – about not speaking with President Trump. Roberts' response on June 10, 2025, to Governor Newsom's X post states that President Trump's call logs, and President Trump himself, assert that the President spoke with Governor Newsom.[148] Roberts's response on X does not indicate when this conversation between Governor Newsom and President Trump occurred.[149] Watters' questioned why Governor Newsom would lie about speaking with the President.[150] Watters' statement does not indicate

---

[145] *Id.* at 462.

[146] Pl. Resp. at 14.

[147] *Id.*

[148] Amend. Compl. ¶ 37.

[149] *Id.*

[150] *Id.* ¶ 47.

when this conversation between Governor Newsom and President Trump occurred.[151] The issue at the heart of FNN's statements was *if* Governor Newsom ever had a phone call conversation with President Trump, not *when*.[152] And, FNN excluded pertinent context in casting this assertion of dishonesty.

It is reasonably conceivable, under the facts set forth in the complaint, that the "gist" or "sting" of FNN's statements is that Governor Newsom lied about having ever talked with President Trump and, thus, FNN's statements may reasonably be understood to be substantially untrue.

### 2. It is reasonably conceivable that Watters' statement is not a protected opinion.

FNN asserts that Watters' statements are constitutionally protected opinions based on disclosed facts.[153] FNN argues that the language used by Watters indicates his statement was an opinion because he "did not make a definitive assertion, but instead asked questions in an openly skeptical tone."[154] Watters' questions, FNN contends, "Why would Newsom lie and claim that Trump never called him? Why would he do that?" were rhetorical questions meant to invite the audience to consider

---

[151] *Id.* ¶ 46.

[152] *See Id.* ¶¶ 37, 46, 47.

[153] Def. Mot. at 15.

[154] *Id.* at 16.

other possibilities.[155]  Further, FNN argues that *Jesse Watters Primetime* is a "talk show" and that audiences expect an "opinionated" host that uses "hyperbolic language."[156]  And, FNN asserts, Watters based his opinion on disclosed facts—that Roberts had President Trump's call logs showing a call between the President and Governor Newsom and that Governor Newsom denied that there was a call.[157]

Governor Newsom argues that rephrasing statements of fact as rhetorical questions does not immunize FNN from liability.[158]  "Viewers would have understood the broadcasts as communicating *as a fact* that Newsom lied about the timing of a call between himself and Trump."[159]  Governor Newsom points to the chyron beneath Watters, framed as a "Fox News Alert" stating "Gavin Lied About Trump's Call," and argues that "[t]he language spoken—and displayed in the corresponding chyron—demonstrate that FNN was presenting as fact that Newsom was lying about not speaking to Trump."[160]  Governor Newsom contends that FNN was not basing an opinion on disclosed facts because FNN intentionally edited the

---

[155] *Id.*

[156] *Id.* at 19.

[157] *Id*. at 18.

[158] Pl. Resp. at 21.

[159] *Id*. at 16.

[160] *Id.* at 24.

clip to omit President Trump's statement that he spoke to Governor Newsom "[a] day ago."[161]

"Use of hyperbolic, informal, crude, or ungrammatical language, satirical tone, or vituperative, juvenile name-calling provide support for the conclusion that offensive comments were nonactionable opinion."[162] However, stating "in my opinion, this person is a liar," "implies a knowledge of facts which lead to the conclusion that [a particular person] told an untruth."[163] "To decide whether a statement is fact or opinion, a court must put itself in the place of an average reader and determine the natural and probable effect of the statement, considering both the language and the context."[164]

Here, the language of FNN's statement is not contested. Watters, framed by the chyron "Gavin Lied about Trump's Call," stated:

> Newsom responded, and he said there wasn't a phone call. He said Trump never called him. Not even a voicemail, he said. But John Roberts got Trump's call logs, and it shows Trump called him late Friday night and they talked for 16 minutes. Why would Newsom lie and claim Trump never called him? Why would he do that?[165]

---

[161] *Id*. at 23.

[162] *ZL Technologies,* 220 Cal.Rptr.3d at 589 (cleaned up).

[163] *Milkovich v. Lorain Journal Co*., 497 U.S. 1, 18 (1990).

[164] *Summit Bank v. Rogers*, 142 Cal.Rptr.3d 40, 62 (Cal. Ct. App. 2012) (cleaned up).

[165] Amend. Compl. ¶¶ 47, 48.

On the record presently established, this statement implies knowledge of facts that could lead a person to believe Governor Newsom lied. FNN relied on President Trump's phone call logs yet excluded President Trump's temporal description of the call – "a day ago."

The alleged facts do not support finding Watters' rhetorical question to be a constitutionally protected opinion. FNN broadcast the statement on Fox News Channel.[166] The statement was announced as a "Fox News Alert."[167] "[A] headline over a news story arguably implies a factual assertion."[168] It is reasonably conceivable that an average viewer could determine the statement to be one of fact, not opinion.

### 3. A finding of actual malice is reasonably conceivable

FNN contends that Governor Newsom cannot meet the "daunting requirements" of pleading actual malice.[169] FNN alleges that the conclusory allegations in Governor Newsom's complaint that FNN "maliciously lied," acted "with actual malice" or "knew the falsity" of its statements, do not suffice to prove

---

[166] *Id*. ¶ 48.

[167] *Id.*

[168] *Moyer v. Amador Valley J. Union High School Dist.*, 225 Cal.App.3d 720, 726 (Cal. Ct. App. 1990).

[169] Def. Mot. at 20.

actual malice.[170]  Governor Newsom responds that actual malice may be reasonably inferred from the alleged facts in the complaint.

Governor Newsom alleges that FNN "deliberately presented a false picture" of the June 6/7 phone call "to fulfill their preconceived narrative"[171] and that "Fox advanced this falsity about Governor Newsom out of a desire to harm him politically."[172]  He contends that FNN harbors ill-will towards him and engages in a "pattern of employing preconceived false narratives to attack Governor Newsom."[173] To support this claim, Governor Newsom cites to a segment aired on *Jesse Watters Primetime*, on June 20, 2025, in which Watters states Governor Newsom attended "a swanky wine tasting party as riots engulfed Los Angeles and mobs vandalized buildings."[174]  While Governor Newsom asserts the June 20 comments about his attending a "swanky wine tasting party" are false, the Court understands their inclusion in the complaint to support his allegation of actual malice.  This "misrepresentation," Governor Newsom argues, represents "Fox's perverse internal

---

[170] *Id*. at 21, 24.

[171] Amend. Compl. ¶¶ 71, 72.

[172] *Id*. ¶ 80.

[173] *Id*. ¶ 85.

[174] *Id*. ¶ 86.

culture and slavish partisan mission . . . to purposely avoid the truth in service of a preconceived narrative."[175]

The Amended Complaint alleges facts which, when viewed in a light most favorable to Governor Newsom, evidence FNN published false information about Governor Newsom with knowledge of the statement's falsity or with a reckless disregard for whether or not it was true. [176] Thus, under the standard applicable here, the facts are reasonably susceptible to a finding of actual malice.

FNN also maintains that Governor Newsom failed to state a claim for defamation based on Roberts statements[177] and the wine tasting commentary.[178] To be sure, Governor Newsom's lawsuit is against FNN for its alleged misrepresentation of Governor Newsom's veracity in his description of his communication with President Trump.[179] The Court understands these additional allegations to relate to Governor Newsom's assertion of actual malice. At this stage, the Court declines to dissect the complaint in the manner proposed by FNN. To the extent evidentiary objections are asserted in advance of trial, the Court will address them at that time.

---

[175] *Id*. ¶ 84.

[176] *See US Dominion, Inc.*, 2021 WL 5984265, at *28.

[177] Def. Mot. at 31.

[178] *Id*. at 33.

[179] *See* Amend. Compl.

**4. California Civil Code § 48a does not bar Governor Newsom's claim.**

FNN contends that Governor Newsom sent a "belated" request for correction on June 27, 2025, the same day FNN was served with this lawsuit.[180] That request, FNN contends, does not satisfy California Civil Code § 48a, because it does not allow FNN time to "make a correction to *avoid* litigation."[181] And, FNN argues, they did issue a correction as required under § 48a.[182] "Given that correction, Newsom does not and cannot plead a 'failure to correct' under § 48a(b)"[183] and his complaint must fail.[184]

Governor Newsom responds that "§ 48a does not impose a requirement that a plaintiff have served the retraction demand on a defendant before filing suit," and instead, provides that "a plaintiff must serve a demand 'within 20 days after knowledge of the publication or broadcast of the statements claimed to be libelous.'"[185] Further, Governor Newsom argues that for a retraction to be legally sufficient and effective, "it must be full and complete and cannot be evasive or

---

[180] Def. Mot. at 28.

[181] *Id.*

[182] *Id.*

[183] *Id.* at 29.

[184] *Id.* at 30.

[185] Pl. Resp. at 35.

equivocal, not partial or hesitant, and it cannot contain any insinuations."[186]

"Watters's remarks," according to Governor Newsom, "were evasive, equivocal, partial, hesitant, and full of insinuations."[187]

Under California Civil Code § 48a, in any action for defamation, the plaintiff "shall only recover special damages unless a correction is demanded and is not published or broadcast" and the "correction is demanded within 20 days."[188] For a retraction or correction "to be legally sufficient and effective, it must be full and complete and cannot be evasive or equivocal, not partial or hesitant, and it cannot contain any insinuations. It must be an honest endeavor to repair all the wrong caused by any defamatory statements or insinuations."[189] "[F]or a defendant to rely upon a retraction in mitigation of damages, 'it should appear that it was fully, fairly, and promptly made, and is such as an impartial person would consider reasonable and satisfactory under the circumstances of the case.'"[190]

Here, Governor Newsom timely served a retraction request on FNN. The alleged defamatory statement was made on June 10, 2025, and under § 48a,

---

[186] *Id*. at 36.

[187] *Id.*

[188] CAL. CIV. C. § 48a(a)-(b).

[189] *Weller v. American Broadcasting Companies, Inc*., 232 Cal.App.3d 991, 1010 (Cal. Ct. App. 1991).

[190] *Id.* at 1011.

36

Governor Newsom needed to serve a retraction demand within 20 days of the defamatory statement.[191] He did not need to allow FNN time to fix the error to avoid litigation.[192] Governor Newsom demanded retraction of the June 10 comment on June 27, seventeen days after the statement was made.[193] In response, Watters published the previously deleted statement of President Trump's that he spoke with Governor Newsom "[a] day ago."[194] Watters commented that he understood Governor Newsom's X post to mean that "there was no call. Ever. Period," not that there was no call or voicemail a day ago.[195] Watters explained that he did not find President Trump's temporal qualification to seem relevant.[196] FNN contends Watters July 17, 2025, statement is a full and complete retraction. But, whether Watters' statement suffices as a retraction under California law is a matter to be determined by the factfinder.[197] Under the facts alleged, it is reasonably conceivable that a factfinder could find Watters' assertion that Governor Newsom was confusing, unclear, and sloppy, to be less than the "full and complete" retraction California law

---

[191] CAL. CIV. C. § 48a(b).

[192] *See id.* (The statute does not prohibit a contemporaneous suit and demand).

[193] Amend. Compl. ¶ 74, Def. Mot., Ex. E.

[194] Amend. Compl. ¶ 75.

[195] *Id*. ¶ 75.

[196] *Id*. ¶ 75.

[197] *Twin Coast Newspapers, Inc. v. Superior Court*, 208 Cal. App. 3d 656, 661-2 (1989).

demands. The July 17 report could equally be considered evasive, equivocal, partial, hesitant, and replete with insinuations. Neither the timing of Governor Newsom's demand, nor the substance of Watters' subsequent statement, warrant dismissal at this time.

### 5. Delaware Superior Court Civil Rule 9(g) does not bar Governor Newsom's claim.

FNN argues that "Delaware's Rule 9(g) also requires 'specifically stat[ing] the amount of special damages'"[198] and, because Governor Newsom did provide such a statement, his complaint is barred from proceeding under Delaware Superior Court Civil Rule 9(g).[199] Governor Newsom argues that he "was not required to plead those damages because they are presumed."[200]

Under Superior Court Civil Rule 9(g), "[a] pleading . . . which prays for unliquidated money damages, shall demand damages generally without specifying the amount, except when items of special damage are claimed, they shall be specifically stated."[201] As a general rule, "oral defamation is not actionable without special damages."[202] However, in cases involving slander *per se*, the claim may be

---

[198] Def. Mot. at 30.

[199] *Id.*

[200] Pl. Resp. at 37.

[201] Del. Super. Ct. Civ. R. 9(g).

[202] *Spence*, 396 A.2d at 970.

38

established without proof of special damages due to the difficulty in attributing specific financial loss to the statement.[203] "In broad terms, these are statements which: (1) malign one in a trade, business or profession, (2) impute a crime, (3) imply that one has a loathsome disease, or (4) impute unchastity to a woman."[204] To speak critically of someone in a personal capacity does not necessarily constitute professional malignment.[205] But, a broadly circulated personal critique that greatly impacts the plaintiffs good name and reputation and thereby affects his professional standing may warrant special damages.[206] "[U]nder Delaware law, injury to reputation is permitted without proof of special damages."[207]

Here, FNN speaks about Governor Newsom's professional career in a critical manner. As a public official, Governor Newsom has accepted a risk of closer public scrutiny.[208] FNN assails Governor Newsom's veracity – his personal character. When a personal critique greatly impacts a plaintiff's professional standing and reputation, a plaintiff may proceed without pleading special damages.[209] Governor

---

[203] *Id.*

[204] *Id.*

[205] *McMahon v. McMahon*, 2024 WL 1905462, at *4 (Del. Super. Ct. Apr. 29, 2024).

[206] *See Stitt v. Lyon*, 103 A.2d 332 (Del. Super. Ct. 1954).

[207] *Gannett Co., Inc. v. Kanga*, 750 A.2d 1174, 1184 (Del. 2000).

[208] *Mosesian*, 233 Cal.App.3d at 1696.

[209] *Gannett Co., Inc.*, 750 A.2d at 1184.

Newsom, alleges that FNN's statement that he was a liar resulted in reputational injury,[210] and that FNN intended to harm his career politically.[211] The complaint alleges facts reasonably susceptible to this conclusion thus permitting Governor Newsom to move forward without an allegation of special damages.

## III.   ATTORNEYS' FEES

FNN contends that they are entitled to attorneys' fees under California's anti-SLAPP Statute based on Governor Newsom's withdrawal of his California Unfair Competition Law claim.[212] FNN argues that "Newsom's decision to abandon his meritless [Unfair Competition Law] claim makes [it] a 'prevailing defendant' under California's anti-SLAPP law and entitles [FNN] to a mandatory award of attorneys' fees it incurred addressing the [Unfair Competition Law] claim."[213] Governor Newsom, of course, opposes this application.[214]

California's anti-SLAPP statute serves "to prevent and deter 'lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.'"[215] "The anti-SLAPP statute provides a

---

[210] Amend. Compl. at 26.

[211] *Id.* ¶ 80.

[212] D.I. 17 at 1.

[213] *Id*. at 2.

[214] Pl. Resp. at 38.

[215] *Soukup v. Law Offices of Herbert Hafif*, 139 P.3d 30, 42 (Cal. 2006) (cleaned up).

'procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights.'"[216]  The California Supreme Court rejected the idea of the anti-SLAPP statute as being read as substantive law.[217]  FNN contends that, if the Court finds that the California's anti-SLAPP provision does not apply, then the Court should address the issue of attorneys' fees under New York's anti-SLAPP statute.[218]  To be sure, Delaware procedural law controls here.  Because California and New York's anti-SLAPP statutes provide procedural guardrails to litigation, the Court declines to apply those statutes to the claim Governor Newsom chose to withdraw.

---

[216] *Crossroads Investors, L.P. v. Federal National Mortgage Assn*., 222 Cal.Rptr.3d 1, 18 (Cal. Ct. App. 2017) (cleaned up).

[217] *Flatley v. Mauro*, 139 P.3d 2, 18 (Cal. 2006).

[218] Def. Mot. at 38.

## CONCLUSION

The Court finds that FNN will not suffer an overwhelming hardship defending itself in Delaware – the State it has chosen as its corporate home. And, at this stage, under facts set forth in the amended complaint and upon reasonable inferences drawn in favor of Governor Newsom, recovery is conceivable even when viewed through the more discerning lens applied to allegations of defamation of a public official. A reasonable interpretation of the facts presently before the Court support Governor Newsom's claim. And this Court declines to apply California or New York procedural rules to Delaware litigation. Accordingly, FNN's motion to dismiss under Superior Court Civil Rule 12(b)(3) and (b)(6) and its motion for attorneys' fees are **DENIED.**

**IT IS SO ORDERED.**

_____
Sean P. Lugg, Judge